# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 13-6015

_____

In re: Damon Pursell Construction Company

*Debtor*

------------------------------

Bank of the West

*Plaintiff - Appellee*

v.

Damon Pursell Construction Company; Kraus Anderson Capital, Inc.; CML-MO
City Development, LLC; Commercial Credit Group, Inc.; J&M Sarai, LLC
Allen Financial Corporation; SG Equipment Finance USA

*Defendant*s

National Bank of Kansas City

*Intervenor Defendant - Appellant*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 23, 2013
Filed: May 6, 2013

_____

Before KRESSEL, SCHERMER and NAIL, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

National Bank of Kansas City ("NBKC") appeals from a grant of summary judgment by the bankruptcy court in favor of Bank of the West ("BOW"), rejecting NBKC's requests for equitable relief, and ruling that BOW had a first priority lien on a piece of the debtor's equipment and is entitled to proceeds from the sale of that equipment.[1]  We have jurisdiction over this appeal from the final judgment of the bankruptcy court.  *See* 28 U.S.C. § 158(b).  For the reasons set forth below, we affirm.

## ISSUE

The issue in this appeal is whether the bankruptcy court properly granted summary judgment to BOW.

## BACKGROUND

### A.    Procedural History

This appeal arises from a dispute regarding the existence, validity and priority of liens of three lenders on a piece of equipment that was owned by the debtor, and the proceeds from the sale in bankruptcy of that equipment.  The procedural history is complex.  We provide a simplified description of such history in an effort to facilitate an understanding of it.

_____

[1]    The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri, was the author of a Memorandum Opinion and relevant orders entered in this case.  The Honorable Cynthia A. Norton, United States Bankruptcy Judge for the Western District of Missouri, authored the April 3, 2013 judgment that serves as the basis for this appeal.

BOW filed a multi-count amended complaint against several defendants. In Count VII, BOW sought a declaration that it held a first lien on a piece of the debtor's equipment, senior to that of Kraus-Anderson Capital, Inc. ("Kraus-Anderson"). It also sought a determination that it was entitled to the proceeds from the sale of that equipment. NBKC intervened, maintaining it was entitled to priority in the proceeds from the equipment based on principles of equity. BOW and NBKC each filed a motion for summary judgment. BOW moved for summary judgment on Count VII of the amended complaint, as well as all counterclaims and cross-claims related to the equipment and its proceeds. NBKC sought summary judgment with respect to its counterclaim for equitable relief.

The bankruptcy court entered orders on December 8, 2011 and January 4, 2012,[2] granting BOW summary judgment regarding the equipment and its proceeds. The court denied NBKC's motion for summary judgment.

NBKC appealed the December 8, 2011 and January 4, 2012 orders of the bankruptcy court. We dismissed the appeal as premature because those orders did not dispose of all of the claims in the adversary proceeding, and we denied NBKC leave to appeal the interlocutory orders. After the bankruptcy court entered an order in November 2012, NBKC again appealed the December 8, 2011 and January 4, 2012 orders. In its notice of appeal, NBKC stated that "These Orders became final pursuant to the Order of the Court entered November 20, 2012." Once again, we

---

[2]    The bankruptcy court entered two orders on January 4, 2012. One order denied motions to reconsider the court's December 8, 2011 order, filed by NBKC and Kraus-Anderson. That order stated that the court would amend its December 8, 2011 order to clarify the disposition of NBKC's and Kraus-Anderson's counterclaims and cross-claims. The second January 4, 2012 order clarified that BOW was entitled to summary judgment on NBKC's counterclaim and counterclaims filed by Kraus-Anderson. The court also stated that it would abstain from hearing NBKC's and Kraus-Anderson's cross-claims against each other.

dismissed the appeal because the November 2012 order was not a final order. Our order directed NBKC to "return to the bankruptcy court and request it enter a judgment which disposes of all of the plaintiff's claims against all of the defendants, as well as all of the defendants' counterclaims and cross claims."

On April 3, 2013, the bankruptcy court entered such a judgment. This appeal represents the third effort of NBKC to appeal the orders entered in 2011 and 2012. NBKC apparently does not understand that it can only appeal from a final judgment, and there is but one in this case, the April 3, 2013 judgment. The notice of appeal purports to appeal from the same two interlocutory orders the appellant appealed from previously. We construe the appeal to be from the April 3, 2013 judgment.[3]

## B.    Facts

The relevant facts are not in dispute. By a loan and security agreement dated June 2005, the debtor granted BOW a security interest in the debtor's personal property. BOW properly perfected its security interest by filing a financing statement with the Missouri Secretary of State. In 2007, when the debtor purchased two 2006 Road Mobile Trommels, serial numbers HT-182M-1007 (the "Trommel 1007") and HT-182-M-1008 (the "Trommel 1008"), BOW's blanket security interest attached to both pieces of equipment.

In February 2007, the debtor executed a promissory note and a commercial security agreement in favor of NBKC, granting NBKC a security interest in the Trommel 1008. NBKC properly perfected its security interest by filing a financing statement with the Missouri Secretary of State. BOW disputes NBKC's claim that the debtor used the loans proceeds to purchase the Trommel 1008. However, because

---

[3]    Because the parties had already stated their arguments, we consider this case based on the briefs filed in January and February 2013, in NBKC's previous appeal.

4

it did not affect the outcome, the bankruptcy court assumed NBKC held a purchase money security interest, senior to BOW's blanket security interest, in the Trommel 1008.

In March 2007, the debtor executed a promissory note in favor of Kraus-Anderson, granting Kraus-Anderson a security interest in the Trommel 1007. Kraus-Anderson properly perfected its security interest by filing a financing statement with the Missouri Secretary of State. The debtor used the loan proceeds to purchase the Trommel 1007. Consequently, Kraus-Andersen held a purchase money security interest, senior to BOW's blanket security interest, in the Trommel 1007.

Thereafter, and before filing its bankruptcy petition, the debtor sold the Trommel 1008. The debtor, in error, paid the proceeds from the sale of the Trommel 1008 to Kraus-Anderson (a party whose loan was secured by the Trommel 1007), rather than to NBKC (a party whose loan was secured by the Trommel 1008). By doing so, the debtor paid off the loan from Kraus-Anderson.

On September 15, 2010, the debtor filed its petition for relief under Chapter 11. In February 2011, BOW commenced its adversary proceeding, which led to this appeal. In March 2011, the bankruptcy court granted the debtor's third motion for approval of the sale of the Trommel 1007. The sale proceeds were greater than the amount the debtor owed to NBKC, but less than the amount the debtor owed to BOW. The sale order allowed the debtor to pay the sales commission and to partially satisfy BOW's lien. In addition, the order stated that "[t]he balance of the proceeds shall be held in the [d]ebtor's DIP account pending a resolution of the dispute over who holds the first priority lien and to pay the balance owed to [BOW] on its second priority lien."

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Lang v. Mutual of Omaha Bank (In re Negus-Sons, Inc.),* 460 B.R. 754, 755 (B.A.P. 8th Cir. 2011), *aff'd per curiam* 701 F.3d 534 (8th Cir. 2012). We review a grant of summary judgment *de novo*. *Paul v. Allred (In re Paul)*, 488 B.R. 104, 2013 WL 709562, *1 (B.A.P. 8th Cir. 2013) (citing *Peter v. Wedl*, 155 F.3d 992, 996 (8th Cir. 1998)); *Negus-Sons, Inc.*, 460 B.R. at 755.

## DISCUSSION

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), applicable pursuant to Fed. R. Bankr.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

We view the summary judgment record in the light most favorable to NBKC, the nonmoving party, and afford it all reasonable inferences. *Ryan v. Capital Contractors, Inc.,* 679 F.3d 772, 776 (8th Cir. 2012). BOW's summary judgment "burden . . . may be discharged by 'showing' - that is, pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 ; *Paul,* 488 B.R. 104, 2013 WL 709562, *1 ("The burden on the moving party 'is only to demonstrate, *i.e.*, to point out . . . , that the record does not disclose a genuine dispute on a material fact.' ") (quoting *City of Mt. Pleasant, Iowa v. Assoc. Elec. Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir. 1988) (citation, internal quotation marks omitted)). "[T]he nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial and cannot rest on allegations in the pleadings.' " *Ryan*, 526 F.3d at 776 (quoting *Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997) (internal marks omitted) (citing *Celotex*, 477 U.S. at 324)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

(the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts.").

## A. The bankruptcy court correctly held that BOW held a senior security interest in the Trommel 1007.

We agree with the bankruptcy court's decision that, after the sale of the Trommel 1008 and the erroneous use of the proceeds to pay off the loan from Kraus-Anderson, BOW, who previously held a second priority security interest in the Trommel 1007, moved into the senior secured position. "A security interest cannot exist independent of the obligation it secures." *Negus-Sons, Inc.,* 460 B.R. at 758 (quoting *In re Advanced Aviation, Inc.,* 101 B.R. 310, 313 (Bankr. M.D. Fla. 1989)) (citations omitted). And, Kraus-Anderson did not appeal the bankruptcy court's ruling that Kraus-Anderson's security interest in the Trommel 1007 was "extinguished" when the debtor paid off its loan using the proceeds of the Trommel 1008. The bankruptcy court then properly determined that, as a matter of law, NBKC did not have a claim against the Trommel 1007. NBKC's remedies were to seek relief from parties other than BOW and with respect to equipment other than the Trommel 1007; it could seek to enforce its rights against the buyer of the Trommel 1008 or the proceeds of such equipment, or it could file a claim in the debtor's bankruptcy case. MO. REV. STAT. §§ 400.9-315(a)(1) and (2).

## B. The grant of summary judgment to BOW on NBKC's claims for equitable relief was proper.

The bankruptcy court granted summary judgment to BOW, determining, as a matter of law, that NBKC was not entitled to relief on its equitable claims for imposition of an equitable lien and reformation based on mutual mistake.

NBKC bore the burden of proving its equitable claims at trial. *See Fee v. Eccles (In re Eccles)*, 393 B.R. 845, 854 (Bankr. W.D. Mo. 2008), *aff'd* 407 B.R. 338 (B.A.P. 8th Cir. 2009) (claims for equitable relief failed when party did not allege or

7

establish why legal remedy was insufficient, and party did not prove elements for an equitable lien); *Commerce Bank, N.A. v. Tifton Alum. Co., Inc. (In re Win-Vent, Inc.)*, 217 B.R. 803, 810 (Bankr. W.D. Mo. 1997) (summary judgment where counterclaimant "fail[ed] to establish necessary elements of" his claim for equitable lien), *aff'd* 217 B.R. 798 (W.D. Mo. 1997); *General Dynamics Corp. v. Luten,* 566 S.W.2d 452, 460 (Mo. 1978) (en banc) ("As a condition for obtaining equitable relief, petitioner must show in a usual case that he has no adequate remedy at law. It is required that such must affirmatively appear from the face of the pleadings and from the evidence.") (citation omitted)*; Thompson v. Koenen,* ___ S.W. 3d ___, 2013 WL 1197486, at *3 (Mo. Ct. App. 2013) (party seeking reformation based on mutual mistake must show necessary elements) (quoting *Will Invs. v. Young,* 317 S.W.3d 157, 164-65 (Mo. Ct. App. 2010). Reformation based on mutual mistake and imposition of an equitable lien are extraordinary remedies. *See Win-Vent*, 217 B.R. at 810 ("Imposition of an equitable lien is an extraordinary remedy.")*; Ethridge v. TierOne Bank*, 226 S.W. 3d 127, 132 (Mo. 2007) (citation omitted) ("Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake.") (quoting *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo. Ct. App. 1997) (internal marks omitted)).

NBKC argues that summary judgment was improper because BOW failed to adequately support its motion. NBKC claims that the "bankruptcy court appears to have concluded that if NBKC was unable to set forth sufficient uncontroverted facts to obtain summary judgment on its counterclaim against [BOW], then it was axiomatic that [BOW] should prevail on all claims asserted between the parties." According to NBKC, its equitable claims should have proceeded to trial. We disagree. The bankruptcy court properly examined the record, and we find no error with its decision to grant summary judgment to BOW.

NBKC's arguments focus largely on the portion of the bankruptcy court's ruling that "as an overarching bar to any equitable relief," NBKC's claims must fail

because it had an adequate remedy at law. Relevant law shows that the grant of summary judgment to BOW was proper. *See O'Neal v. Southwest Mo. Bank of Carthage (In re Broadview Lumber Co., Inc.*), 118 F.3d 1246, 1253 (8th Cir. 1997) ("Generally, equity will not interceded if there is an adequate remedy at law.") (quoting *Hammons v. Ehney*, 924 S.W.2d 843, 847 (Mo. 1996) (en banc) (marks omitted)). The bankruptcy court pointed to a section of the Missouri Uniform Commercial Code, providing that a security interest continues in collateral after its sale to a third party. *See* MO. REV. STAT. §400.9-315(a)(1). It also cited the provision of the Missouri Uniform Commercial Code, stating that a security interest attaches to the identifiable proceeds of the collateral. *See* MO. REV. STAT. §400.9-315(a)(2). In addition, the court noted that NBKC could file an unsecured proof of claim in the debtor's case, a case in which the confirmed plan proposed 100% payment to unsecured creditors. We agree with the bankruptcy court's decision that, based on the record, NBKC had adequate remedies at law.

In addition, with respect to the merits of NBKC's request for an equitable lien, the bankruptcy court examined the record and determined that "there [was] no factual basis to impose an equitable lien on the Trommel 1007 in NBKC's favor." It correctly stated the law regarding equitable liens, borrowing NBKC's citation to the definition of it: "An equitable lien is merely an encumbrance on property that is construed based on the express agreement of the parties or with reference to the situation of the parties at the time of the contract and by the attendant circumstances." *Tobin v. Ins. Agency Co.*, 80 F.2d 241, 243 (8th Cir. 1935). It also recognized that an equitable lien can arise based on the parties' agreement or in the interest of justice. *Exchange State Bank v. Fed. Surety Co.,* 28 F.2d 485, 487 (8th Cir. 1928). Separated into its elements, the required showing for an equitable lien is: "1) a duty or obligation owing by one person to another; 2) a *res* to which that obligation fastens, which can be identified or described with reasonable certainty; and (3) an intent, express or implied, that the property serve as security for the payment of the debt or

obligation." *TierOne Bank,* 226 S.W.3d at 134 (quoting *Estate of Ripley v. Mortgage One Corp.,* 16 S.W. 3d 593, 596 (Mo. Ct. App. 1999) (internal marks omitted)).

We agree with the bankruptcy court's rejection of NBKC's request for an equitable lien. The parties never agreed that NBKC's loan for the purchase of the Trommel 1008 would be secured by a totally separate piece of equipment, the Trommel 1007. And, there is no reason based on the record to say that BOW should be barred from enforcing its second lien position where the debtor mistakenly paid to Kraus-Anderson of the proceeds from Trommel 1008, rather than paying such proceeds to NBKC. The bankruptcy court correctly said that the similarity between the Trommel 1007 and 1008 is not a basis upon which to impose an equitable lien. There is no basis upon which to reverse the bankruptcy court's decision that imposition of an equitable lien was not merited.

Likewise, the bankruptcy court's grant of summary judgment to BOW on NBKC's cause of action for reformation of the agreement for mutual mistake was proper. To reform a contract based on mutual mistake, "there must be 'clear, cogent and convincing evidence' of (1) a preexisting agreement between [the parties] . . ., (2) a scrivener's mistake in drafting the agreement, and (3) that the mistake was mutual as between the [parties]." *TierOne Bank*, 226 S.W. 3d at 132 (citation omitted). As the bankruptcy court recognized, there is no basis for reforming NBKC's security agreement with the debtor to grant NBKC a first priority lien on the Trommel 1007. The court correctly ruled that none of the required elements for a showing of mutual mistake is present. NBKC's loss of its interest arises from nothing other than the debtor's unilateral mistake when applying the proceeds from NBKC's collateral, the Trommel 1008.[4]

---

[4] The bankruptcy court also aptly noted that "reforming the security agreement would have absolutely no effect on the UCC financing statements filed with the Missouri Secretary of State, so any reformed security agreement would be unperfected . . . ." We agree.

**CONCLUSION**

The decision of the bankruptcy court is AFFIRMED.

---